**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>          **Plaintiff/Respondent**<br><br>    **v.**<br><br>**JASDEV SINGH,**<br><br>          **Defendant/Petitioner** | **CASE NO. 1:08-cr-00212-AWI-2**<br>            **1:12-cv-01628-AWI**<br><br>**ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>**(Document #477)** |

## I.    INTRODUCTION

This matter arises from the criminal conviction of Defendant/Petitioner JASDEV SINGH ("Petitioner").  Petitioner is currently incarcerated at the Adams County Correctional Complex ("ACCC") and is proceeding in this matter *in propria persona*.  Petitioner brings a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. Section 2255.  For the following reasons, Petitioner's motion is DENIED without an evidentiary hearing.

## II.    BACKGROUND

In 2008, Petitioner and others were indicted for their apparent involvement in an international drug trafficking operation. Doc. 56; see Doc. 1.  Petitioner is an alien lawfully present in the United States. Doc. 478 at 7:22-23.  Petitioner was charged under a Third Superseding Indictment as follows: Count 1 – Conspiracy to Distribute and to Possess with the Intent to Distribute Cocaine, in violation of 21 U.S.C. Sections 841(a)(1), 841(b)(1)(A), and 846; Count 2 – Attempted Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. Sections 841(a)(1),

841(b)(1)(A), and 846; and a Criminal Forfeiture Allegation pursuant to 21 U.S.C. Section 853 for the forfeiture of U.S. currency involved or intended to be involved in the other charged violations. Doc. 56.

Petitioner entered into a plea agreement wherein he agreed to plead guilty to Count 1 and admit to the forfeiture. Doc. 139 at 3:3-18.  In return, the government agreed to dismiss Count 2. Doc. 5:12-16.  On June 5, 2009, Petitioner entered a plea of guilty to Count 1 (a felony) and admitted to the forfeiture. Doc. 140; Doc. 356 at 21:16-19, 21:25-22:7.  The Court[1] engaged in a colloquy with Petitioner prior to accepting his guilty plea to establish that he understood the contents of the plea agreement and that his plea of guilty was both knowing and voluntary. Doc. 356 at 5:20-21:15.  Petitioner's plea was accepted by the Court. Doc. 356 at 22:18-20.

Petitioner filed a motion to dismiss on July 23, 2010. Doc. 372.  The present motion describes the grounds for Petitioner's motion to dismiss as the denial of "[Petitioner's] Sixth Amendment right to counsel and due process of law based upon facts which were discovered (subsequent to the entry of the plea)." Doc. 477 at 4.[2]  The motion to dismiss was subsequently withdrawn. Doc. 468 at 5:13-18.

Defense counsel submitted a Sentencing Memorandum, apparently after "settlement discussions" with the government, which outlined the following: defense counsel would withdraw the motion to dismiss, defense counsel would request a sentence of 80 months imprisonment without objection by the government, the government would request a prison term of 87 months, and the government would join defense counsel's request that the Court recommend Petitioner participate in a five hundred (500) hour drug treatment program.[3] Doc. 445.

Petitioner was sentenced on July 11, 2011, to a term of 84 months incarceration followed by 60 months supervised release. Doc. 446, 447 at 2-3.  Petitioner was ordered to pay a fine of $2,000 and a special assessment of $100. Doc. 447 at 5.  The Court recommended incarceration at

---

[1] This case originally came before the Honorable Oliver W. Wanger.  It was transferred to this Court upon Judge Wanger's retirement. Doc. 450.

[2] Petitioner maintains that a government informant was present for and involved in confidential discussions with defense counsel regarding defense strategy in Petitioner's case. Doc. 477 at 4-5.

[3] Petitioner refers to the drug treatment program as the Residential Drug Abuse Treatment Program ("RDAP"). See Doc. 477 at 4.  The Court will utilize Petitioner's acronym to reference any drug treatment program.

1   the facility in Lompoc, California, and participation in a Residential Drug Abuse Treatment

2   Program ("RDAP"). Doc. 447 at 2.

3         Petitioner was incarcerated at ACCC, a "low security" level facility in Mississippi. Doc.

4   477 at 7-8.  BOP apparently categorized Petitioner with a Public Safety Factor ("PSF") for

5   Deportable Aliens.[4]  An immigration detainer was issued by U.S. Immigration and Customs

6   Enforcement ("ICE") on December 7, 2011. Doc. 477 at 7.

7         Petitioner claims that he and defense counsel attempted to "mitigate" his PSF designation

8   and incarceration at ACCC by writing letters to BOP and ICE. Doc. 477 at 7-9.  Copies of those

9   letters were attached to Petitioner's motion as exhibits.

10        Prior to filing this motion, Petitioner filed a complaint against the Department of

11  Homeland Security ("DHS") that asserts claims pursuant to the Privacy Act and seeks to amend

12  his PSF classification. Doc. 1 (1:12-cv-00498-AWI-SKO); see also Doc. 38 (1:12-cv-00498-AWI-

13  SKO) (First Amended Complaint).  The factual allegations in that complaint largely track the

14  allegations made in support of the present motion.

15        This motion brought pursuant to 28 U.S.C. Section 2255 was filed October 2, 2012. Doc.

16  477.  It has been fully briefed by Petitioner and the government. See Doc. 477; see Docs. 482-484;

17  see Doc. 493.

18

19                    **III.    LEGAL STANDARD**

20  Section 2255 provides, in pertinent part:

21          A prisoner in custody under sentence of a court established by Act of Congress
22          claiming the right to be released upon the ground that the sentence was imposed in
            violation of the Constitution or laws of the United States . . . may move the court

23  ──────────────────────

24  [4] A PSF is relevant factual information regarding the inmate's current offense, sentence, criminal history or
    institutional behavior that requires additional security measures be employed to ensure the safety and protection of the
    public.  The PSF for "Deportable Alien" is defined as follows:

25          A male or female inmate who is not a citizen of the United States . . . The PSF shall not be applied,
26          or shall be removed when the U.S. Immigration and Customs Enforcement (ICE) or the Executive
            Office for Immigration Review (EOIR) have determined that deportation proceedings are
27          unwarranted or there is a finding not to deport at the completion of deportation proceedings . . . .

28  BOP Program Statement 5100.08, Chapter 5, p. 8.  Based on BOP's Program Statement PSF descriptions, it appears
    that a PSF of "deportable alien" applies to any prisoner "who is not a citizen of the United States."

which imposed the sentence to vacate, set aside or correct the sentence.
28 U.S.C. § 2255.  Habeas relief is available to correct errors of jurisdiction and constitutional error but a general "error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979).  Courts must "construe pro se habeas filing liberally." Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003).  Under Section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255).  The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotations omitted).  To earn the right to a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. McMullen, 98 F.3d at 1159. Mere conclusory statements in a Section 2255 motion are insufficient to require a hearing. United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980).

## IV.    DISCUSSION

Petitioner asserts in his motion that he was denied due process and effective assistance of counsel. Doc. 477 at 3.  Specifically, Petitioner maintains that his Fifth and Sixth Amendment rights were violated "when the Government . . . breached the plea agreement when it affirmatively agreed with the [BOP], to categorize [Petitioner] with a [PSF] for Deportable Aliens, because this position was fundamentally inconsistent with the Government's assurances that in exchange for pleading guilty, [Petitioner] would be deemed non-deportable." Doc. 477 at 3 (footnote omitted).  Petitioner claims that during the course of the criminal proceedings it was represented to him that he would not be subject to deportation. Doc. 477 at 3, 5-6.

Petitioner contends that "his non-deportable status" "was of particular concern to enter a plea of guilty and withdraw his meritorious Motion to Dismiss." Doc. 477 at 6.  Petitioner claims

that

> the *quid pro quo* from [Petitioner's] point of view and understanding . . . was that in addition to the negotiated term of incarceration, was his non-deportable status in order to: (1) be placed in a minimum security prison; (2) participate in the RDAP; (3) participate in a [Residential Reentry Program ("RRC")]; and, (4) based on [Petitioner's] family commitments and responsibilities hoped on [Petitioner's] family's behalf be reunited at the earliest possible time, based on the credit he would receive for participating in the aforesaid programs.

Doc. 477 at 6 (emphasis in original).

According to Petitioner, the government had an obligation to ensure that BOP did not classify Petitioner with a PSF of Deportable Aliens, and its failure to do so was a breach of the plea agreement. See Doc. 477 at 3, 6-7. Petitioner asserts that, pursuant to 18 U.S.C. § 3621(e), a Deportable Alien PSF designation prevents a minimum security facility designation for the inmate and prohibits participation in the RDAP and RRC programs. Doc. 477 at 7. In Petitioner's view, he was entitled by the plea agreement to participate in the RDAP and RRC programs and to receive credit from these programs that would shorten his term of incarceration. See Doc. 477 at 6-7. As a remedy, Petitioner's motion provides as follows:

> Accordingly, [Petitioner] respectfully requests that the Court vacate the sentence and resentence [Petitioner] *more in compliance with the sentence he would have served* if the Government, pursuant to its assurances, had ensured that the [BOP] had not deemed [Petitioner] with a PSF of Deportable Aliens; resulting in, including, but not limited to, (1) prohibited from being placed in a minimum security prison; (2) prohibited from participating in the RDAP; (3) prohibited from participating in a RRC; (4) would be forced to remain in prison beyond expiration of his term while awaiting deportation proceedings; and, (5) prohibited from being transferred to a facility closer to the family.

Doc. 477 at 4 (emphasis added).

In its answer, the government argues that Petitioner waived his right to collaterally attack his conviction and sentence as part of the plea agreement. Doc. 482 at 2-3. Petitioner's plea agreement contained a waiver provision, which states:

> (g) The defendant understands that the law gives him a right to appeal his conviction and sentence. The defendant waives any right to appeal his conviction and sentence and any right he may have to bring any other post-conviction attack on his conviction and sentence. He specifically agrees not to file a motion under 28 U.S.C. [Sections] 2255 or 2241 attacking his conviction and sentence.

Doc. 139 at 4:4-10. The government contends that the record demonstrates Petitioner made a

knowing and voluntary waiver of his rights. Doc. 482 at 5.  Further, the government maintains that the plea agreement contains no statement concerning Petitioner's deportability and states that "no threats, promises or representations have been made, nor agreement reached, other than those set forth in this Agreement." Doc. 482 at 3; see Doc. 139 at 10:19-23 ("10. Entire Agreement. [¶]The defendant and his attorney acknowledge that no threats, promises or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce the defendant to plead guilty." (underline in original)).  The government also contends that the record demonstrates Petitioner was informed that he "would be subject to deportation if convicted." Doc. 482 at 3; see Doc. 478 at 7:22-25.

**A.  Waiver**

The government's argument that Petitioner waived his right to bring a Section 2255 motion will be addressed first.  A defendant's waiver of the right to challenge his or her conviction or sentence is generally enforceable if (1) the waiver encompasses the present motion, and (2) the waiver is knowingly and voluntarily made. United States v. Harris, 628 F.3d 1203, 1205 (9th Cir. 2011) (quoting United States v. Charles, 581 F.3d 927, 931 (9th Cir. 2009)).  The waiver provision found in Petitioner's plea agreement specifically waives the right to bring a Section 2255 motion. Doc. 139 at 4:8-10.

The record is also clear that Petitioner's acceptance of the plea agreement and the waiver provision were made knowingly and voluntarily.  The Court questioned Petitioner on whether he had read and understood the plea agreement before signing it and whether he had an opportunity to discuss the agreement with defense counsel to his satisfaction. Doc. 356 at 7:22-9:3.  The Court then reviewed each provision of the agreement with Petitioner to make sure he understood the agreement. See Doc. 356 at 9:4-6.  Among the portions of the plea agreement specifically reviewed by the Court was the waiver provision.  Petitioner acknowledged he understood the waiver and that he agreed to it. Doc. 356 at 11:2-12.  The Court specifically found that Petitioner was capable of entering an informed plea and that his guilty plea was knowing and voluntary. Doc. 356 at 21:10-13.  The record demonstrates that Petitioner knowingly and voluntarily waived his

1   right to bring a Section 2255 motion when he entered the plea agreement.

2           However, Petitioner now claims a denial of due process and effective assistance of

3   counsel. Doc. 477 at 3.  Petitioner argues that his guilty plea and waiver of rights were uninformed

4   and/or involuntary because he was not aware of the possibility of removal.  In fact, his motion

5   states that "[Petitioner's] understanding was that there would be no immigration consequences."

6   Doc. 477 at 13.

7           A waiver cannot bar a claim that relates to the validity of the waiver itself. United States v.

8   Abarca, 985 F.2d 1012, 1014 (9th Cir. 1993).  A claim that an unfulfilled promise made by the

9   government induced the defendant's acceptance of a plea agreement may implicate the

10  agreement's voluntariness. See United States v. Quan, 789 F.2d 711, 713 (9th Cir. 1986).

11  Likewise, a claim that ineffective assistance of counsel resulted in a defendant unknowingly or

12  involuntarily entering into a plea agreement implicates the validity of the plea agreement itself,

13  and such a claim is not waived. See Washington v. Lambert, 422 F.3d 864, 870–71 (9th Cir.

14  2006); (discussing Jones v. United States, 167 F.3d 1142, 1145–46 (7th Cir. 1999)); United States

15  v. Pruitt, 32 F.3d 431, 433 (9th Cir. 1994).  Here, Petitioner's due process and effective assistance

16  of counsel claims are without merit and the Court must deem the waiver valid and enforceable.

17

18  **B.  Due Process**

19  The Ninth Circuit has described the "legal principles governing the enforcement of plea

20  agreements" as follows:

21          "[W]hen a plea rests in any significant degree on a promise or agreement of the
            prosecutor, so that it can be said to be a part of the inducement or consideration,
22          such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262
            (1971).  In determining whether a plea agreement has been broken, courts look to
23          "what was 'reasonably understood by [the defendant] when he entered his plea of
            guilty.'" United States v. Arnett, 628 F.2d 1162, 1164 (9th Cir. 1979) (quoting
24          United States v. Crusco, 536 F.2d 21, 27 (3d Cir. 1976)).  If disputed, the terms of
            the agreement will be determined by objective standards.  Arnett, 628 F.2d at 1164.
25          The government will be held to "the literal terms of the agreement." United States
            v. Garcia, 519 F.2d 1343, 1344-45 (9th Cir. 1975).
26

27  United States v. Clark, 781 F.2d 730, 731 (9th Cir. 1986) (quoting United States v. Travis, 735

28  F.2d 1129, 1132 (9th Cir. 1984)); see United States v. Quan, 789 F.2d 711, 713 (9th Cir. 1986).

1   "If the prosecutor fails to perform his side of the plea agreement, the guilty plea becomes

2   involuntary, and the ensuing sentence subject to collateral attack." Quan, 789 F.2d at 714 (citing

3   Clark, 781 F.2d at 731.

4

5   **1.  Promise of Non-Deportability**

6   Petitioner claims that the government's promise that he would be non-deportable induced him to

7   accept the agreement and plead guilty. Doc. 477 at 3, 6.  However, the record is completely devoid

8   of any promise or assurance that Petitioner would be deemed non-deportable or that his

9   immigration status had anything to do with his guilty plea.  The plea agreement itself contains no

10  provision respecting Petitioner's immigration status, let alone a promise on behalf of the

11  government that Petitioner would be deemed non-deportable.  The integration clause makes it

12  clear that nothing outside the written plea agreement was part of the bargain. Doc. 139 at 10:19-

13  23.

14         Any reference to Petitioner's immigration status is likewise absent from the Court's

15  colloquy with Petitioner, during which the Court reviewed each provision of the plea agreement.

16  Doc. 356 at 5:20-21:15.  Neither Petitioner nor his attorney at any point during the colloquy

17  objected or otherwise informed the Court that such an essential condition of the agreement had

18  been overlooked.  The record clearly demonstrates that no legally binding promise that the Court

19  would find Petitioner non-deportable was made to induce his acceptance of the plea agreement.

20         Petitioner also claims that the government's promise that he would be non-deportable

21  induced him to withdraw the motion to dismiss. Doc. 477 at 6.  The Sentencing Memorandum

22  does provide for the withdrawal of Petitioner's motion to dismiss and other consideration may be

23  construed as a subsequent agreement between Petitioner and the government.  It appears these

24  promises might have encouraged Petitioner to withdraw his motion to dismiss and perform his end

25  of the plea agreement. See Doc. 445.  However, the Sentencing Memorandum is completely

26  lacking in any reference to Petitioner's immigration status or any promise that he would be

27  deemed non-deportable.  Additionally, the record of Petitioner's sentencing hearing is silent with

28  respect to any promise of non-deportability and the Court was not apprised of the absence of such

1   a promise.  See Doc. 468.  The record clearly demonstrates that no promise that Petitioner would

2   be non-deportable was made to induce his withdrawal of the motion to dismiss.

3        Petitioner also claims that "[t]he Government's aforesaid assurance that [Petitioner] was

4   non-deportable was reinforced by defense counsel; AUSA Escobar; agents of [DHS, ICE],

5   Bakersfield, California, during the safety valve colloquy; the Honorable Court during the plea

6   allocution; by the Probation Department during the pre-sentence interview and again by the

7   Honorable Court at sentencing, to the effect that, since [Petitioner] was non-deportable, the Court

8   recommended: (1) [Petitioner] be placed in a minimum security prison; (2) participate in the

9   RDAP; and, (3) participate in a RRC." Doc. 477 at 6.  As discussed above, the record is clear that

10  no such promises of non-deportability were made by any party, let alone the Court.

11       Further, the fact that the Court made certain recommendations does not confirm the

12  existence of a non-deportability promise or in any way comment on Petitioner's immigration

13  status.  The Court may make recommendations to BOP irrespective of a defendant's immigration

14  status or possibility of deportation.  Cf. Advisory Committee's Notes on 2013 Amendments to Fed.

15  R. Crim. P. 11 (explaining that the warning required by subdivision (b)(1)(O) must be provided to

16  every defendant regardless of immigration status).  Moreover, the Court's recommendations to

17  BOP regarding a prisoner's place of confinement or participation in certain BOP programs are not

18  binding on BOP. See 18 U.S.C. § 3621 ("Any order, recommendation, or request by a sentencing

19  court that a convicted person serve a term of imprisonment in a community corrections facility

20  *shall have no binding effect* on the authority of the Bureau under this section to determine or

21  change the place of imprisonment of that person." (emphasis added)).  Thus, Petitioner's assertion

22  that the Court, or any other party, validated or confirmed his supposed non-deportable status is

23  without merit.

24       The Court finds that the record clearly shows that no legally binding promise was made to

25  Petitioner to induce his guilty plea and waiver.

26

27     **2.   Promise of Entitlement to Participate in RDAP and RRC**

28  Affording Petitioner a liberal construction of his petition, it is possible to construe his due process

claim as being based on a promise of entitlement to be placed in a minimum security prison, to participate in RDAP and RRC, and to receive credit from participation in those programs. Doc. 477 at 13; see also Doc. 493 at 3. This claim, too, must fail because the record demonstrates no promise was made to Petitioner that he was entitled to be placed in any particular type of facility, participate in any specific programs, or receive any resulting credit. In this regard, the plea agreement contains no reference to confinement at a minimum security prison, participation in RDAP, participation in RCC, or any credit that might be received. The government's promises to dismiss Count 2 and to recommend various level-reductions for sentencing purposes, however, are clearly provided in the plea agreement, implying that there were no other binding agreements. Doc. 139 at 5:11-27. The plea colloquy is also lacking in any reference to a minimum security facility, RDAP, or RRC. Doc. 356 at 5:20-21:15.

Further, the plea agreement provides that the Court is not a party to the agreement and is not bound by it. Doc. 139 at 10:24-28; see Silva-Romero v. United States, 2010 WL 624267, at *3 (E.D. Cal. 2010) ("plea agreements are essentially contracts between the criminal defendant and the prosecution. They cannot set out a specific term of imprisonment because the prosecution does not decide the sentence in the case; the court, which is not a party to the agreement and which cannot be bound by it, does the sentencing."). The fact that the Court was not bound by the plea agreement was reiterated during the plea colloquy. Doc. 356 at 11:14-23. Even if the government had made a promise to *recommend* Petitioner participate in RDAP, the Court was not obligated to accept that recommendation.[5]

The Sentencing Memorandum does provide that the government and defense counsel will request the Court's recommendation that Petitioner participate in RDAP. Doc. 445 at 2:8-10. This request was made by both parties at the sentencing hearing. Doc. 468 at 6:12-17, 10:7-13. It was noted that Petitioner's participation in the program "is subject to eligibility and space availability

---

[5] Petitioner also describes his alleged entitlements as being "in addition to the negotiated term of incarceration." Doc. 477 at 3, 6. The Court notes that from the record there does not appear to be any "negotiated term of incarceration" to which Petitioner and the government might have agreed and Petitioner fails to allege what the negotiated term might be. This, therefore, cannot be considered a promise that might form the basis of a due process claim. At any rate, the Court would not be obligated to impose a sentence of whatever term of incarceration was negotiated by the parties. Silva-Romero, 2010 WL 624267, at *3.

as determined by [BOP]." Doc. 468 at 10:11-13.  The Court did in fact make the recommendation that Petitioner participate in RDAP. Doc. 468 at 20:5-6; Doc. 447 at 2.  This, however, does not entitle Petitioner to participate in the program because the BOP is not bound by this Court's recommendations.  See 18 U.S.C. § 3621.  This fact is also supported by the acknowledgement that the Court's recommendation of incarceration at Lompoc, California, was made "only insofar as this accords with security classification and space availability." Doc. 447 at 2.  The Court clearly informed Petitioner that any determination regarding space availability and security classification would be made by BOP, not the Court.  None of this suggests an entitlement to participate in RDAP or to be housed at a particular facility.  The Court also stresses that nowhere in the record is there any mention of RRC or something that could be construed as such.  There is also no specific mention of credit for program participation, although successful completion of a drug treatment program may result in a reduced sentence. 18 U.S.C. § 3621(e)(2)(B).  However, that subsection provides the BOP with discretion to reduce a sentence, not the Court.

The foregoing shows that Petitioner's claim that he would be entitled to a specific housing assignment, program participation, or credit from such programs is unreasonable and unsupported by anything in the record.  It appears to the Court that any promise the government made regarding Petitioner's plea and sentence were clearly set forth in the plea agreement and the Sentencing Memorandum and were thereafter stated on the record in open court.  The record demonstrates that the government has upheld its commitments in the plea bargain and the Sentencing Memorandum.  Since the government has "abided by the expressed terms of the plea agreement" and the Sentencing Memorandum, no breach has occurred. Clark, 781 F.2d at 732; Quan, 789 F.2d at 714.

Petitioner's claim that he was induced to enter the plea agreement and withdraw his motion to dismiss by a promise of non-deportability is foreclosed by the record.  Further, the record demonstrates that no promise was made regarding entitlement to be confined at a minimum security prison, to participate in RDAP or RRC, or to receive credit for such participation, and any understanding that such a promise had been made is unreasonable.  The Court finds that there was no due process violation concerning Petitioner's plea agreement or withdrawal of the motion to

1   dismiss.  In this regard, Petitioner's acceptance of the plea agreement and the waiver provision

2   was made knowingly and voluntarily.

3

4   **C. Effective Assistance of Counsel**

5   To state a claim for ineffective assistance of counsel, the movant must allege facts to support a

6   showing that (1) the attorney's performance was deficient—in other words, that it "fell below an

7   objective standard of reasonableness"—and (2) the deficiency was prejudicial. Strickland v.

8   Washington, 466 U.S. 668, 687, 692 (1984).  To demonstrate prejudice in the context of a plea, a

9   movant must demonstrate a "reasonable probability that, but for counsel's errors, he would not

10  have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59

11  (1985).

12

13      **1.  Performance**

14  Initially, the Court notes that, although couched as a claim of ineffective assistance of counsel,

15  Petitioner does not specifically allege any conduct attributable to his attorney on which to base this

16  claim.  As with his due process claim, Petitioner emphasizes *the government's* allegedly violative

17  conduct as the basis for his claim. See Doc. 477 at 3 ("The ground upon which this motion is

18  based is that [Petitioner] was denied his . . . Sixth Amendment right[] to . . . effective assistance of

19  counsel when the government . . . breached the plea agreement.").  Throughout the motion,

20  Petitioner claims that promises or representations concerning his non-deportability were made or

21  affirmed by the government, as well as defense counsel, ICE, the Probation Department, and the

22  Court. See Doc. 477 at 5-6, 13.  These claims are unsupported by the record. See Part IV.B., supra.

23      Petitioner also invokes the Supreme Court's ruling in Padilla v. Kentucky, 559 U.S. 356

24  (2010), which held that defense counsel is required to advise a defendant about the risk of

25  deportation arising from a guilty plea. Doc. 477 at 12; Padilla, 559 U.S. at 367.  However,

26  Petitioner does not specifically allege *counsel's* failure to inform him of potential removal

27  consequences.  Petitioner appears to argue that *the government* should have informed him of any

28  immigration-related consequences. Doc. 477 at 12.  Petitioner suggests that the government's

1    failure to do so is an indication of "negotiating in bad faith" on the part of the government. Doc.

2    477 at 12.

3          To the extent that Petitioner's claims rely on an alleged breach of the plea agreement, those

4    claims are rejected.  The factual allegations that could potentially support a claim that the

5    government denied or interfered with Petitioner's right to effective assistance of counsel—i.e., a

6    promise of non-deportability and breach thereof—are without merit. See Part IV.B., supra.

7          The Court makes no determination as to whether an alleged <u>Padilla</u> violation constitutes

8    ineffective assistance of counsel in this case.  While it is clear that the Supreme Court's holding in

9    <u>Padilla</u> requires defense counsel to advise a defendant about the risk of deportation, the decision in

10   <u>Chaidez v. United States</u>, 133 S.Ct. 1103 (2013), held that <u>Padilla</u> did not apply retroactively.

11   <u>Chaidez</u>, 133 S.Ct. at 1113.  Here, Petitioner entered his guilty plea in June of 2009, prior to the

12   Supreme Court's decision in <u>Padilla</u>. <u>See</u> Doc. 139; <u>see</u> Doc. 140.  His sentencing and the

13   withdrawal of the motion to dismiss, however, occurred in July of 2011, after <u>Padilla</u>. <u>See</u> Doc.

14   445; <u>see</u> Doc. 446.  Moreover, as the government argues, Petitioner was apprised of potential

15   deportation at the detention hearing. Doc. 478 at 7:22-25 ("[Petitioner] is not a citizen of the

16   United States, although he is lawfully here . . . .  [I]t appears that from the report that I have, that

17   should he be convicted of this offense, *he would be subject to deportation if convicted*." (emphasis

18   added)), 8:15-18 ("[T]he Court finds not based on so much flight, although I do find that because

19   *he would be subject to deportation*, and a long sentence if he were convicted of the offense . . . ."

20   (emphasis added)).[6]

21         It is unnecessary to rule on this question in this case.  A court addressing a claim of

22   ineffective assistance of counsel need not address both prongs of the Strickland test if the

23   petitioner's showing is insufficient as to one prong. <u>Strickland</u>, 466 U.S. at 697.  "If it is easier to

24   dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect

25   will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 694.

26

27   _____

28   [6] The government's and Petitioner's briefs attribute the "subject to deportation" statement(s) to AUSA Escobar, which is consistent with the transcript. <u>See</u> Doc. 478 at 7:20. However, the transcript suggests that these statements were actually made by the Magistrate Judge. <u>See</u> Doc. 478 at 8:15-9:6 (making findings by "the Court").

## 2.   Prejudice

Petitioner has failed to satisfy the prejudice prong of the <u>Stickland</u> test.  While Petitioner

repeatedly states that his non-deportable status and the other promises discussed in Part IV.B.,

supra, were "of particular concern" or a "quid pro quo" to his entering the guilty plea and

withdrawing his motion to dismiss, he never states that he would have otherwise opted to proceed

to trial. <u>See</u> Doc. 477; <u>see</u> Doc. 493.  If Petitioner would not have gone to trial rather than enter a

guilty plea, there is no prejudice to any alleged ineffective assistance of counsel. <u>See</u> <u>Doganiere v.</u>

<u>United States</u>, 914 F.2d 165, 168 (9th Cir.1990); <u>Rogers v. United States</u>, 1 F.3d 697, 699 (8th

Cir.1993) (no prejudice where petitioner "did not allege in his motion or in other pleadings before

the district court that he would not have pleaded guilty if the trial court or his attorney had

correctly informed him regarding parole eligibility").

In a habeas corpus proceeding, the alternative to the challenged plea bargain is not another

plea bargain with more favorable terms but rather proceeding to trial. <u>Silva-Romero</u>, 2010 WL

624267, at *3.  In his motion, Petitioner does not seek a trial, he seeks a sentence that is "more in

compliance with the sentence he would have served" had the government not breached the alleged

promise of non-deportability. Doc. 477 at 4.  Petitioner clearly desires to avail himself of the

benefits of the plea agreement he signed and more. See Doc. 477 at 3-4.  This is a strong

indication that he was not prejudiced, even assuming possible misconduct.

Petitioner notes that the Supreme Court has recognized that "[p]reserving the [defendant's]

right to remain in the United States may be more important to the client than any potential jail

sentence." Doc. 477 at 13-14 (quoting <u>Padilla</u>, 559 U.S. at 368, in turn quoting <u>INS v. St. Cyr</u>, 533

U.S. 289, 322-23 (2001)).  However, the relief Petitioner seeks through this motion—

resentencing—will not likely affect Petitioner's deportable status.  Petitioner has made no request

that his guilty plea be vacated in order to proceed to a trial on the criminal charges; thus, his

conviction would remain in place.  "[T]he terms of the relevant immigration statute are succinct,

clear, and explicit in defining the removal consequence" for Petitioner's conviction. <u>See</u> <u>Padilla</u>,

559 U.S. at 368 (citing 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission

has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of

1    a State, the United States or a foreign country relating to a controlled substance . . . , other than a

2    single offense involving possession for one's own use of 30 grams or less of marijuana, is

3    deportable")).  So long as Petitioner's conviction stands—and he makes no request or argument

4    that it should be vacated—it cannot be said that Petitioner has been prejudiced by potential

5    deportation.

6         Petitioner has not demonstrated that he has been prejudiced by any alleged ineffective

7    assistance of counsel.  On the contrary, Petitioner's motion appears to show a clear desire to

8    receive what he claims are the benefits of his plea bargain.  As such, the Court finds that there was

9    no violation of Petitioner's right to the effective assistance of counsel concerning his plea

10   agreement or the withdrawal of the motion to dismiss.  In this regard, the Court finds that

11   Petitioner did not enter into the plea agreement or withdraw his motion to dismiss unknowingly or

12   involuntarily.

13

14   **D.  Conclusion**

15   Petitioner knowingly and voluntarily accepted the plea agreement. See Part IV.A.-C., supra.  The

16   waiver provision found in the agreement is therefore valid and enforceable.  While Petitioner

17   couched his claims as violations of due process and effective assistance of counsel, Petitioner's

18   main grievance relates to the sentence imposed and its execution. See Part IV.B.-C., supra; see

19   also Doc. 477 at 6 (providing that "in addition to the negotiated term of incarceration" Petitioner

20   would be afforded program participation and the resulting credits).[7]  Construed as a challenge to

21   the sentence ordered by the Court, Petitioner's motion falls within the scope of the waiver

22   contained in the plea agreement and therefore must fail. See Alvarez v. United States, 2009 WL

23   2031705, at *3 (E.D. Cal. 2009) (challenge to sentence imposed was within scope of Section 2255

24   waiver).[8]

25

26   [7] In his reply, Petitioner clearly demonstrates that the credits from program participation are an important concern. See
     Doc. 493 at 7 (providing a chart outlining RDAP and RRC credits and the corresponding release dates).  Petitioner's

27   contention therefore appears to be that had he not been given a Deportable Aliens PSF classification, he would have
     received credit for participation in RDAP and RRC and been released from custody on the corresponding dates.

28   [8] Additionally, the Court notes that "exclusion from a prison's various drug treatment programs or community
     confinement programs due to one's status as deportable alien does not violate the Constitution." Reynaga v. United

1

2                           **V.      CONCLUSION AND ORDER**

3  Petitioner has failed to allege specific facts that would entitle him to relief under Section 2255.  As

4  such, a hearing is not necessary.

5            For the foregoing reasons, Petitioner's motion to vacate, set aside, or correct his sentence is

6  DENIED without an evidentiary hearing.

7

8  IT IS SO ORDERED.

9  Dated:  __March 25, 2014__            _____

10                                          SENIOR  DISTRICT  JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  States, 2009 WL 1324768, at *1 (E.D. Cal. 2009) (citing McLean v. Crabtree, 173 F.3d 1176, 1186 (9th Cir. 1999), and district court cases).